AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

**FILED**
**August 31, 2026**
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

United States of America
v.
Lukman Owolabi Ganiyu (01)
Adeniyi Akeem Somoye (02)

*Defendant(s)*

Case No. 3:26-MJ-1149-BN

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 2019 until March 2026 in the county of Dallas in the Northern District of Texas and elswhere, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 371 [18 U.S.C. § 201(c)(1)(B)] | Conspiracy to receive illegal gratuities by a public official |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent Natalie Stewart.

☑ Continued on the attached sheet.

Natalie Stewart
*Complainant's signature*

Natalie Stewart, Special Agent, FBI
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: 8-31-2026

*Judge's signature*

City and state: Dallas, Texas

DAVID L. HORAN, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF A**
**CRIMINAL COMPLAINT**

I, Natalie Stewart, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint charging **LUKMAN OWOLABI GANIYU (GANIYU) and ADENIYI AKEEM SOMOYE (SOMOYE)** with Conspiracy to receive illegal gratuities by a public official in violation of Title 18, United States Code, Section 371 (18 U.S.C. § 201(c)(1)(B)).

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been so employed since January 2017. During that time, I have received training in conducting investigations and related legal matters at the FBI Academy in Quantico, Virginia. I am currently assigned to the Dallas Field Office. I have participated in a variety of criminal investigations, including investigations involving public corruption and civil rights violations. Through such investigations and training, I have become familiar with the patterns and activities of individuals who engage in public corruption and the use of mobile telephones, computers, and electronic communications between coconspirators to facilitate illegal activities. My duties include, but are not limited to, conducting covert investigations of public officials, physical surveillance, monitoring electronic surveillance, the execution of arrest warrants and search warrants, and the review of email and phone content obtained pursuant to search warrants.

3. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary for the limited purpose of establishing sufficient probable cause to believe that **GANIYU and SOMOYE** have violated 18 U.S.C. § 371.

## PROBABLE CAUSE

4. This conspiracy is composed of **GANIYU** utilizing his official position as a former U.S. Citizenship and Immigration Services (USCIS) Senior Immigration Services Officer (ISO3) in Dallas, Texas[1] to approve immigration applications[2] in exchange for money. It is believed that in some instances, **GANIYU** conducts the approvals and **SOMOYE** collects the money, some of which is then sent to **GANIYU**. The conspiracy operates by circumventing USCIS procedures to include, but not limited to, 1) falsely designating applicants to **GANIYU's** area of responsibility, 2) foregoing required interviews, 3) avoiding supervisory approvals, 4) failing to check criminal history including wants and warrants, and 5) communicating with applicants via means other than officially approved methods (the USCIS Electronic Immigration System (ELIS) and in-person applicant interviews).

5. As discussed further below, investigators believe that the purposes of the conspiracy are:

a. Provide immigration approval for applicants from (typically) African countries in an expedited manner, including applicants who otherwise are not eligible; and

b. Receiving bribes and gratuities from applicants to benefit **GANIYU** and **SOMOYE**.

---

[1] GANIYU's career progression with USCIS is as follows:
11/25/2018: Entered on Duty with USCIS in Overland Park, KS
09/29/2019: Promoted to USCIS ISO2 San Antonio, TX
10/08/2023: Transferred to Charlotte, NC as an USCIS ISO2
04/07/2024: Promoted to USCIS ISO3 Dallas, TX
03/21/2026: Resigned from USCIS "due to personal reasons"

[2] According to www.uscis.gov, the forms referenced in this affidavit are as follows:
I-130: Petition for Alien Relative- Use this form if you (the petitioner) are a U.S. citizen, lawful permanent resident, or U.S. national and you need to establish your qualifying relationship with an eligible relative (the beneficiary) who wishes to come to or stay in the United States permanently and apply for the Permanent Resident Card (also called a Green Card).
I-485: Application to Register Permanent Residence or Adjust Status-Use this form to apply for lawful permanent resident status if you are in the United States.
I-751: Petition to Remove Conditions on Residence- Use this form if you are a conditional permanent resident who obtained status through marriage and want to apply to remove the conditions on your permanent resident status.
N-400: Application for Naturalization- Use this form to apply for U.S. citizenship.

**USCIS OI INVESTIGATION**

6. In or around May 2025, USCIS Office of Investigations (OI),[3] received an allegation that **GANIYU** was selecting and processing certain USCIS applicants outside of common practice and policy. **GANIYU** is a former Senior Immigration Services Officer (ISO3), USCIS, Dallas Field Office, Dallas, Texas.

7. USCIS OI conducted a preliminary review of **GANIYU's** government email account[4], for October 2023 through May 2025. In that review were six J.P. Morgan Chase (Chase) financial statements attributed to **GANIYU** covering the time period June 2023 through December 2023. Based on a review of **GANIYU's** Chase bank statements, **SOMOYE** made multiple payments during the above time period to **GANIYU** via Zelle,[5] totaling $5,550. Based on USCIS OI queries of **SOMOYE**, **GANIYU** approved **SOMOYE**'s N-400, "Application for Naturalization," on or about December 21, 2022.

8. Additionally, the email review included five Navy Federal Credit Union (NFCU) financial statements, attributed to **GANIYU** covering the time period August 2023 through January 2024. At least one NFCU statement included a $1,000 Zelle payment, on October 19, 2023, from the partial name "Mariam Nyar-". Based on USCIS OI queries of M.N., whose name was spelled verbatim as "Mariam Nyar" but including the remaining three letters of the last name, , **GANIYU** approved M.N.'s I-130, "Petition for Alien Relative" on or about September 24, 2022, and approved M.N.s I-485 "Application to Register Permanent Residence or Adjust Status" on or about November 3, 2022.

---

[3] USCIS OI is an entity within the Department of Homeland that investigates administrative and internal policy matters. USCIS OI does not handle criminal matters.

[4] According to DHS OIG, employees have no reasonable expectation of privacy when utilizing government email accounts. **GANIYU** signed an electronic document entitled "USCIS Rules of Behavior" as recently as May 15, 2025, acknowledging such.

[5] Based on open-source information, Zelle is a "a convenient way to send and receive money…through your bank or credit union's mobile app or online banking."

9. Based on USCIS OI's review, OI referred the matter to the Department of Homeland Security (DHS) Office of the Inspector General (OIG).[6] DHS OIG obtained financial records, including Cash App[7] transactions associated with **GANIYU**. Based on DHS OIG's review of these transactions, **GANIYU** received multiple payments from individuals whose full or partial names appear to correspond with known applicants listed in the USCIS Electronic Immigration System (ELIS). Based on review of ELIS, at least in part, **GANIYU** processed these applicants. The financial records cover the period from on or about February 4, 2024, through June 11, 2024, during which time four distinct payment senders were identified as USCIS applicants. These applicants were identified based on unique name characters and associated block token IDs.[8] Each sender appears to align – either fully or partially – with names found in USCIS ELIS records. For the above time period, transaction amounts ranged from $250 to $4,000, with a cumulative total of approximately $30,245 received by **GANIYU** from these four applicants.

**FBI INVESTIGATION**

10. In or around June 2025, DHS OIG requested the assistance of FBI Dallas. FBI and DHS OIG obtained additional financial records and obtained toll records for accounts attributed to **GANIYU** and **SOMOYE**.

11. Based on the review of financial records from December 14, 2019, to March 11, 2026, **GANIYU** had multiple unattributable cash deposits and directly received funds from numerous individuals who had pending applications for USCIS immigration matters. Specifically, **GANIYU** made approximately $287,830 worth of cash deposits and received approximately $671,438 in direct payments from individuals via Zelle, CashApp, or other financial platforms. At least some of the approximately

---

[6] DHS OIG is an independent agency with jurisdiction to investigate criminal matters within DHS.

[7] Based on open-source information, Cash App is a "financial services platform, not a bank."

[8] Block token IDs are unique numbers specific to individuals utilizing a financial platform.

$671,438 direct payments are attributable to USCIS applicants.[9] Between 2020 and 2025, **GANIYU's** salary averaged approximately $67,732.45 per year with a total of approximately $407,838.27. Based on my training, knowledge, and experience, unattributable cash deposits may be indicators of criminal or illicit activity especially when the subject is known to have a reoccurring salary and no evidence of other employment or cash businesses. Based on the investigation, Texas employment records, and USCIS outside employment records, **GANIYU** did not have any other reported employment, while working at USCIS.

12. In addition, I understand cash to typically be used in criminal schemes as a means to conceal the true nature (i.e. bribe or gratuity) and source of payment. Based on **GANIYU's** financial platform transactions directly from applicants, it is possible **GANIYU** also accepted cash directly from USCIS applicants. Based on USCIS Records and ELIS, the following USCIS applicants were identified who also provided money to **GANIYU** around the time that **GANIYU** took official action on these same applications.

a. **ADENIYI SOMOYE**

i. On or about December 21, 2022, **GANIYU** assigned himself as the processing ISO2 on **SOMOYE**'s application and later that same day **GANIYU** approved **SOMOYE**'s N-400 application, the Application for Naturalization, in ELIS.

ii. Additionally, on or about July 16, 2019, **SOMOYE**'s spouse and A.S. (**SOMOYE**'s child) filed a USCIS Form I-485, Application to Register Permanent Residence or Adjust Status. On or about March 2, 2023, **GANIYU** processed the applications and on or about March 23, 2023, he approved both I-485s. All approvals were conducted in ELIS.

---

[9] At times, **GANIYU** exchanged money back and forth with applicants. Although the money flowed back and forth, **GANIYU** ultimately received a net positive amount from the specific applicant.

iii. A review of **GANIYU's** financial records show **GANIYU** received approximately $138,392 from **SOMOYE** via bank transfers, most commonly utilizing Zelle and CashApp, between May 2023 and January 2026.

iv. In addition, based on these records, between June 2024 and August 2025, **GANIYU** received an additional $21,900 in money transfers from Double A Favor, LLC. Based on Texas Secretary of State records, **SOMOYE** is the "Manager" of Double A Favor, LLC.

**v.** Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637), for the period of January 1, 2024, through April 7, 2026, showed nine contacts between **GANIYU** and **SOMOYE.**[10]

b. **M.B.B.**

i. On or about January 6, 2024, **GANIYU** assigned himself as the processing ISO2 on M.B.B.'s I-485. On or about January 23, 2024, **GANIYU** waived conducting an interview of M.B.B. On or about January 31, 2024, **GANIYU** bypassed supervisor review and approved the case himself. All approvals were conducted in ELIS.

ii. M.B.B. is also listed as the petitioner on a child's application, F.B. On March 16, 2026, **GANIYU** took control of F.B.'s application and forwarded the application to the Houston Field Office.

iii. A review of **GANIYU's** financial records showed **GANIYU** received approximately $30,905 from M.B.B. between April 2023 and December 2025.

iv. In addition, between January 2024 and October 2025, **GANIYU** received an additional $55,125 from All F Autos LLC. Based on

---

[10] As will be shown below, there was substantial contact between **GANIYU** and **SOMOYE** through WhatsApp which allows the sending of text messages, voice calls, video calls, voice message recordings, and multimedia messages through end-to-end encryption.

Texas Secretary of State records, M.B.B. was the registered agent for All F Autos LLC.

v. Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637), for the period of January 1, 2024, through April 7, 2026, showed two contacts between **GANIYU** and M.B.B.

c. **M.N.**

i. On or about September 24, 2022, **GANIYU** assigned himself as the processing ISO2 on M.N.'s I-130 application, which was assigned to the Minneapolis-St. Paul Field Office, outside of **GANIYU's** jurisdiction. On the same date, **GANIYU** bypassed supervisory review and approved the I-130.

ii. **GANIYU** subsequently approved M.N.'s I-485 on or about November 3, 2022.

iii. On or about May 22, 2023, **GANIYU** assigned himself as the processing ISO2 on three I-130 applications, which were assigned to USCIS Service Centers outside his field office jurisdiction. The beneficiaries in each of the three I-130s were identified as M.N.'s foreign born children, N.A., P.A. and K.A. respectively. On the same date, **GANIYU** deselected supervisory review and approved each I-130. All approvals were conducted in ELIS.

iv. A review of **GANIYU's** financial records shows **GANIYU** received approximately $40,000 from M.N between December 2022 and August 2024.

v. Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637) for the period of January 1, 2024, through April 7, 2026, showed twenty contacts between **GANIYU** and M.N. that overlapped with some of the financial transactions above.

d. **L.A.O.**

i. L.A.O. currently has an I-130 application pending but **GANIYU** has not taken action on the application.

ii. L.A.O. also petitioned for spouse, M.R., whose I-130 application was out of **GANIYU's** jurisdiction. On or about November 25, 2023, **GANIYU** completed a service motion to re-open[11] and then approved M.R.'s I-130 application, despite it being out of his geographical jurisdiction. All approvals were conducted in ELIS.

iii. A review of **GANIYU'S** financial records shows **GANIYU** received approximately $20,548 from L.A.O. between June 2020 and July of 2025.

iv. Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637) for the period of January 1, 2024, through April 7, 2026, showed six contacts between **GANIYU** and L.A.O. that overlapped with some of the financial transactions above.

e. **Charles A.**

i. Charles A. petitioned for his three foreign born children, C.A., P.A. and N.A. The three applications were assigned to USCIS Service Centers outside **GANIYU**'s field office jurisdiction. On or about May 3, 2023, **GANIYU** assigned himself as the processing ISO2 on the I-130's naming C.A., and P.A. as beneficiaries. On the same date, **GANIYU** deselected supervisory review and approved their I-130s. On or about June 15, 2023, **GANIYU** assigned himself as the processing ISO2 on the I-130 naming N.A. as the beneficiary. On

[11] According to USCIS, a Service Motion to Re-Open, is a USCIS internal action to re-open a case. In most instances this action is conducted by USCIS to correct an error committed by USCIS when processing application. However, in L.A.O.'s case, the error was on the part of the applicant and required additional paperwork to correct. The paperwork was never filed.

the same date, **GANIYU** deselected supervisory review and approved the I-130. All approvals were conducted in ELIS.

ii. A review of **GANIYU's** financial records shows **GANIYU** received approximately $37,000 from Charles A. between January 2024 and December 2025.

iii. In addition, between June 2024 and December 2024, **GANIYU** received approximately $4,500 from Cyber47 LLC. Based on open-source database searches, Charles A. was the registered agent for Cyber 47 LLC.

iv. Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637) for the period of January 1, 2024, through April 7, 2026, showed one contact between **GANIYU** and Charles A. that overlapped with some of the financial transactions above.

f. **Q.A.**

i. On or about January 29, 2024, **GANIYU** approved I-485 applications for Q.A., Q.A.'s spouse, and Q.A.'s four children. Prior to approving the applications, **GANIYU** requested each immigration case file from the USCIS National Benefits Center. At the time, **GANIYU** was assigned to the USCIS Charlotte Field Office in Charlotte, North Carolina. All approvals were conducted in ELIS.

ii. A review of **GANIYU's** financial records showed **GANIYU** received approximately $3,050 from Q.A. between June 2020 and April 2024.

iii. Analysis of telephone toll records of **GANIYU's** personal cellular phone (ending in 0637) for the period of January 1, 2024, through April 7, 2026, showed two contacts between **GANIYU** and Q.A. that overlapped with some of the financial transactions above.

g. **O.O.**

i. O.O. petitioned for his spouse and two foreign born children. The three I-130's were assigned to USCIS Service Centers outside **GANIYU's** field office jurisdiction. On or about April 15, 2023, **GANIYU** assigned himself as the processing ISO2 on each of the I-130s. That same day, **GANIYU** deselected supervisory review and approved the three I-130s. All approvals were conducted in ELIS.

ii. A review of **GANIYU**'s financial records showed **GANIYU** received approximately $6,300 from O.O. between June 2020 and October 2023.

iii. Analysis of telephone toll records of **GANIYU**'s personal cellular phone (ending in 0637) for the period of January 1, 2024, through April 7, 2026, showed zero contacts between **GANIYU** and O.O.

13. Based on the review of financial records from December 14, 2019, to November 28, 2025, **SOMOYE** had multiple unattributable cash deposits and directly received funds from numerous individuals who had pending applications for USCIS immigration matters. Specifically, **SOMOYE** made approximately $449,010 worth of cash deposits and received approximately $1,728,348 in direct payments from individuals primarily via Zelle. At least some of the approximately $1,728,348 direct payments are attributable to USCIS applicants.[12] I believe the direct payments from applicants to SOMOYE were, in part, an effort to create separation between the applicants paying GANIYU directly. According to Texas Employment Records, between 2023 and 2025, **SOMOYE's** salary averaged approximately $7,506.39 per year with a total of approximately $22,519.18. Based on my training, knowledge, and experience, unattributable cash deposits may be indicators of criminal or illicit activity especially

[12] At times, **SOMOYE** exchanged money back and forth with applicants. Although the money flowed back and forth, **SOMOYE** ultimately received a net positive amount from the specific applicant.

when the subject is known to have a reoccurring salary and no evidence of other employment or cash businesses.

14. In addition, I understand cash to typically be used in criminal schemes as a means to conceal the true nature (i.e. bribe) and source of payment. Based on **SOMOYE's** financial platform transactions directly from applicants, it is possible **SOMOYE** also accepted cash directly from USCIS applicants. Based on USCIS Records and ELIS, the following USCIS applicants were identified who also provided money to **SOMOYE** around the time that **GANIYU** took action on these same applications.

a. **O.O.F.**

i. On or about September 15, 2023, **GANIYU** assigned himself as the processing ISO2 on O.O.F.'s I-130. On or about September 18, 2023, **GANIYU** approved the I-130.

ii. On or about October 10, 2023, **GANIYU** assigned himself as the processing ISO2 on J.F., B.F. and R.F.'s I-130s; the three are identified as O.O.F.'s children. The applications were in separate service centers outside of **GANIYU**'s field office jurisdiction. That same day **GANIYU** approved the I-130s.

iii. On or about October 11, 2023, **GANIYU** assigned himself as the processing ISO2 on O.O.F.'s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On or about November 8, 2023, **GANIYU** approved the I-485.

iv. On or about September 25, 2025, **GANIYU** assigned himself as the processing ISO3 on O.O.F.s I-751 Petition to Remove Conditions on Residence. The application was outside of **GANIYU**'s field office jurisdiction. On or about October 17, 2025, **GANIYU** approved the I-751. All approvals were conducted in ELIS.

v. A review of **SOMOYE's** financial records showed **SOMOYE** received approximately $5,000 from O.O.F. via bank transfers in October 2025.

vi. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed six contacts between **SOMOYE** and O.O.F.

b. **V.A.**

i. On or about August 21, 2023, **GANIYU** assigned himself as the processing ISO2 on V.A.'s I-130 application. That same day, **GANIYU** approved the I-130.

ii. On or about October 12, 2023, **GANIYU** assigned himself as the processing ISO2 on V.A.s I-485 application. On or about October 20, 2023, **GANIYU** approved the I-485.

iii. On or about July 9, 2024, **GANIYU** assigned himself as the processing ISO3 on E.A.'s I-130 application. E.A. is identified as V.A.'s child. That same day, **GANIYU** approved the I-130.

iv. On or about July 27, 2024, **GANIYU** assigned himself as the processing ISO3 on E.A.'s I-485 application. On or about August 10, 2024, **GANIYU** approved the I-485. All approvals were conducted in ELIS.

v. A review of **SOMOYE's** financial records showed **SOMOYE** received approximately $29,000 from V.A. between September 2021 and November 2025.

vi. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed forty contacts between **SOMOYE** and V.A.

c. **H.E.O.**

i. On November 16, 2023, **GANIYU** assigned himself as the processing ISO2 on H.E.O.'s I-130. The application was outside of

**GANIYU**'s field office jurisdiction. On November 27, 2023, **GANIYU** approved H.E.O.'s I-130.

ii. On December 30, 2023, **GANIYU** assigned himself as the processing ISO2 on H.E.O.'s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On January 3, 2024, **GANIYU** approved H.E.O.'s I-485. All approvals were conducted in ELIS.

iii. A review of **SOMOYE's** financial records showed **SOMOYE** received approximately $23,600 from H.E.O. between October 2021 and October 2025.

iv. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed seven contacts between **SOMOYE** and H.E.O.

d. **A.A.A.K.**

i. On or about June 6, 2023, **GANIYU** assigned himself as the processing ISO2 on A.A.A.K.'s I-130. The application was outside **GANIYU**'s field office jurisdiction. On or about September 6, 2023, **GANIYU** approved the I-130.

ii. On or about September 6, 2023, **GANIYU** assigned himself as the processing ISO2 on A.A.A.K s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On that same day, **GANIYU** approved the I-485.

iii. On September 12, 2023, **GANIYU** assigned himself as the processing ISO2 on B.A.K.'s I-130. B.A.K. is identified as A.A.A.K.'s child. On the same date, **GANIYU** approved the I-130.

iv. On December 30, 2023, **GANIYU** assigned himself as the processing ISO2 on T.A.K. and O.A.K.'s I-130s. T.A.K. and O.A.K. are also identified as A.A.A.K.'s children. Both applications were outside of **GANIYU**'s field office jurisdiction. On January 9, 2024,

**GANIYU** approved the I-130s. All approvals were conducted in ELIS.

v. A review of **SOMOYE's** financial records showed **SOMOYE** received approximately $49,550 from A.A.A.K. between February 2019 and June 2025.

vi. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed twenty-seven contacts between **SOMOYE** and A.A.A.K.

e. **T.H.A.**

i. On December 15, 2023, **GANIYU** assigned himself as the processing ISO2 on T.H.A.'s I-130. The application was outside **GANIYU**'s field office jurisdiction. On December 29, 2023, **GANIYU** approved the I-130.

ii. On January 29, 2024, **GANIYU** assigned himself as the processing ISO2 on T.H.A.'s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On the same date, **GANIYU** approved the I-485.

iii. On December 15, 2023, **GANIYU** assigned himself as the processing ISO2 on A.A. and K.A.'s I-130s. A.A. and K.A. are identified as T.H.A.'s children. The applications were outside of **GANIYU**'s field office jurisdiction. On December 29, 2023, **GANIYU** approved the I-130s.

iv. On February 7, 2024, **GANIYU** assigned himself as the processing ISO2 on A.A. and K.A.'s I-485s. The applications were outside of **GANIYU**'s field office jurisdiction. On February 9, 2024, **GANIYU** approved the I-485s. All approvals were conducted in ELIS.

v. A review of **SOMOYE's** financial records showed **SOMOYE** received approximately $5,150 from T.H.A. between February 2024 and April 2025.

vi. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed eleven contacts between **SOMOYE** and T.H.A.

f. **A.O.A.**

i. On or about May 28, 2024, **GANIYU** assigned himself as the processing ISO3 on A.O.A.'s I-130. On or about June 25, 2024, **GANIYU** approved the I-130.

ii. On or about June 15, 2024, **GANIYU** assigned himself as the processing ISO3 on A.O.A.'s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On or about July 10, 2024, **GANIYU** approved the I-485.

iii. On or about June 25, 2024, **GANIYU** assigned himself as the processing ISO3 on I.A.'s I-130. I.A. is identified as A.O.A.'s child. That same day **GANIYU** approved the I-130.

iv. On or about July 11, 2024, **GANIYU** assigned himself as the processing ISO3 on I.A.'s I-485. The application was outside of **GANIYU**'s field office jurisdiction. On or about July 13, 2024, **GANIYU** approved the I-485. All approvals were conducted in ELIS.

v. A review of **SOMOYE's** financial records showed **SOMOYE** and his business, Double A Favor LLC, received approximately $3,100 from A.O.A. in November 2025.

vi. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through

July 21, 2025, showed twenty contacts between **SOMOYE** and A.O.A.

g. **O.A.A. / PAPARAZZI AFRICAN KITCHEN LLC**

i. On or about January 30, 2025, **GANIYU** assigned himself as the processing ISO3 on O.A.A.'s I-130. **GANIYU** completed several case actions, but did not complete the adjudication process.

ii. On January 30, 2025, **GANIYU** assigned himself as the processing ISO3 on three I-130 applications, which were assigned to USCIS Service Centers outside his assigned field office jurisdiction. The beneficiary in each of the three I-130s was identified as O.A.A.'s foreign born children, A.A., S.A., and O.A. respectively. **GANIYU** completed several case actions for each application but did not complete the adjudication process.

iii. The above-mentioned applications were not completed and or approved, due to a nation-wide USCIS adjudication hold on all Nigerian nationals as of January 1, 2026.

iv. A review of **SOMOYE's** financial records showed **SOMOYE** and his business, Double A Favor LLC, received approximately $53,450 from O.A.A. and his business, Paparazzi African Kitchen LLC, between April 2024 through November 2025.

v. Analysis of telephone toll records of **SOMOYE's** personal cellular phone (ending in 4465), for the period of January 1, 2024, through July 21, 2025, showed nine contacts between **SOMOYE** and O.A.A.

**REVIEW OF WHATSAPP RECORDS**

15. Records obtained from WhatsApp[13] pertaining to **GANIYU's** personal cellular phone show the associated WhatsApp account does not have a registered email

[13] WhatsApp is an application-based communications system utilizing the internet to communicate with other WhatsApp users. WhatsApp allows the sending of text messages, voice calls, video calls, voice message recordings, and multimedia messages through end-to-end encryption from any mobile telephone device or computer to another.

address, but the associated device is a Samsung phone utilizing the Android operating system. Using WhatsApp, **GANIYU** continues to have ongoing contact with **SOMOYE**, M.N., M.B.B., Charles A., Q.A., L.A.O. and numerous other individuals that have pending ELIS applications for a variety of immigration related matters. The chart below is a summary of **GANIYU's** communications with **SOMOYE**, M.N., M.B.B., Charles A., Q.A., and L.A.O. from September 23, 2025, to May 10, 2026.

| **Name** | **WhatsApp Number (ending in)** | **Number of Communications** | **Number of Calls** |
|---|---|---|---|
| **SOMOYE** | 4465 | 2,693 | 427 |
| M.N. | 9835 | 263 | 13 |
| M.B.B. | 4225 | 239 | 29 |
| Charles A. | 0743 | 2 | 1 |
| Q.A. | 0129 | 150 | 25 |
| L.A.O. | 5306 | 19 | 7 |

16. Using WhatsApp, **SOMOYE** continues to have ongoing contact with O.O.F., V.A., H.E.O., A.A.A.K., T.H.A., A.O.A., O.A.A. and numerous other individuals that have pending ELIS applications for a variety of immigration related matters. The chart below is a summary of **SOMOYE's** communications with O.O.F., V.A., H.E.O., A.A.A.K., T.H.A., A.O.A., and O.A.A. from December 4, 2025, to May 18, 2026.

| **Name** | **WhatsApp Number (ending in)** | **Number of Communications** | **Number of Calls** |
|---|---|---|---|
| O.O.F. | 9892 | 108 | 18 |
| V.A. | 5973 | 487 | 85 |
| H.E.O. | 5447 | 190 | 20 |

| | | | |
|---|---|---|---|
| A.A.A.K. | 7773 | 2,306 | 478 |
| T.H.A. | 4777 | 314 | 38 |
| A.O.A. | 8823 | 666 | 132 |
| O.A.A. | 6463 | 288 | 34 |

## CONCLUSION

17. Based on the forgoing facts, there is probable cause to believe that beginning no later than December 2019 and continuing until at least March 2026, in the Northern District of Texas and elsewhere, **GANIYU**, **SOMOYE**, and others known and unknown unlawfully conspired to commit any offense against the United States, to-wit: receiving illegal gratuities by a public official in violation of 18 U.S.C. § 201(c)(1)(B); all in violation of 18 U.S.C. § 371.

## REQUEST FOR SEALING

18. I further request that the Court order that all papers in support of this application, including the affidavit and subsequent warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

19. I declare under penalty of perjury that the above is true and correct to the best of my knowledge and belief.

Natalie Stewart
Special Agent
Federal Bureau of Investigation

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1 on this 31st day of August 2026. This complaint is to be filed under seal.

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS